UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                    )
KIRBY OFFSHORE MARINE PACIFIC,      )   No. C17-0224RSL
LLC,                                )
                                    )
                Plaintiff,          )
        v.                          )   ORDER GRANTING IN PART
                                    )   PLAINTIFF'S MOTION TO EXCLUDE
EMERALD SERVICES, INC.,             )   EXPERT TESTIMONY
                                    )
                Defendant.          )
_____)

This matter comes before the Court on "Plaintiff's Motion in Limine to Exclude Expert Witness Patrick J. Hudson, Ph.D., P.E." Dkt. # 26.[1] In Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), the Supreme Court charged trial judges with the responsibility of acting as gatekeepers to prevent unreliable expert testimony from reaching the jury.[2] The gatekeeping function applies to all expert testimony, not just testimony based on the hard sciences. Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).

---

[1] Pursuant to the undersigned's case management order, motions in limine are noted for consideration on the second Friday after filing. Second Friday motions must be received by the opposing party on or before the filing date, and responses are due on the Wednesday before the noting date. LCR 7(d)(2). Defendant's timeliness objection is overruled.

[2] This matter will be tried without a jury, lessening the consequence of allowing ill-founded opinions to be presented at trial. Nevertheless, inadmissible evidence should be excluded if at all possible, and the parties have an interest in knowing what testimony will be heard as they prepare to present their cases.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION TO EXCLUDE EXPERT TESTIMONY

To be admissible, expert testimony must be both reliable and helpful. The reliability of expert testimony is judged not on the substance of the opinions offered, but on the methods employed in developing those opinions. Daubert, 509 U.S. at 594-95. In general, the expert's opinion must be based on principles, techniques, or theories that are generally accepted in his or her profession and must reflect something more than subjective belief and/or unsupported speculation. Daubert, 509 U.S. at 590. The testimony must also be "helpful" in that it must go "beyond the common knowledge of the average layperson" (U.S. v. Finley, 301 F.3d 1000, 1007 (9th Cir. 2002)) and it must have a valid connection between the opinion offered and the issues of the case (Daubert, 509 U.S. at 591-92). Plaintiff, as the party offering Dr. Hudson as an expert, has the burden of proving both the reliability and helpfulness of his testimony. Cooper v. Brown, 510 F.3d 870, 942 (9th Cir. 2007).

Defendant does not challenge Dr. Hudson's experiential familiarity with (a) tank cleaning procedures, gas-free inspections and certification protocols, and inspection of tanks after repairs or (b) the general division of responsibilities between ship owners and contractors for inspecting vessels and loading, securing, and unloading of cargo. Rather, defendant maintains that testimony on these issues would be unhelpful because it is not particular to the type of vessel at issue in this case, namely a petroleum tank barge. Dr. Hudson intends to offer the following opinions:

(1) Closing the inspection blinds on the KAYS POINT was not within the scope of defendant's services in April 2016 because the hatch covers had to be left off for ventilation and inspection by the marine chemist.

(2) Brian McDonald, the tankerman on the KAYS POINT and plaintiff's employee, signed the marine chemist's certificate which included a statement that the inspection blinds were open.

(3) Mr. McDonald did not instruct defendant's employees to close the inspection blinds, did not provide them the tool they would need to do so, had no evidence that defendant's employees closed the inspection blinds, and did not inspect the tanks himself.

> (4) Mr. McDonald "had the overall responsibility to ensure the safe loading and unloading of fuel products in the tanks on the KAY POINT. This responsibility included ensuring that the deep well inspection blinds were closed and sealed before loading fuel into the tanks."

Dkt. # 27-5 at 8-9.

The second and third opinions identified above are simply statements of fact for which no scientific, technical or other specialized knowledge is necessary. The opinions are unhelpful: the Court does not need the assistance of an expert to determine, based on the evidence presented, whether Mr. McDonald signed the marine chemist certificate, what that certificate said, or whether Mr. McDonald did or did not do certain things.

Dr. Hudson's experiential knowledge regarding how ship owners, contractors, and inspectors usually allocate responsibilities related to the provision of services, whether an intervening inspection generally relieves the contractor of any further obligations, and whether the ship owner has a duty of inspection and acceptance when the vessel is turned over may be helpful in determining whether defendant's employees should have returned to the tanks after the marine chemist did his inspection or whether the intervening inspection released them from any further duty in that regard. Similarly, the testimony may inform the Court's understanding and analysis of the duties Mr. McDonald owed in these circumstances. Plaintiff may, of course, show that the usual division of responsibilities among maritime participants does not apply to a petroleum tank barge and/or that specific contracts or regulations or industry practices govern the relationships of the parties here. Such evidence would certainly lessen the persuasiveness of Dr. Hudson's generic testimony. Had plaintiff provided evidence of unique rules or practices governing petroleum tank barges, the Court may have even concluded that Dr. Hudson's testimony regarding generalities was unhelpful in light of the specifics. As the record currently stands, however, all plaintiff has shown is that the KAYS POINT is a petroleum tank barge, from which it then argues that responsibilities aboard any other kind of vessel are simply

irrelevant. In the absence of any other standard, Dr. Hudson's testimony regarding general maritime practices may be helpful and is therefore admissible.

For all of the foregoing reasons, plaintiff's motion to exclude the testimony of Dr. Hudson is GRANTED in part and DENIED in part. Dr. Hudson will not be permitted to testify to simple facts regarding what did or did not happen on board the KAYS POINT in April 2016. Although he is entitled to rely on facts to inform his opinions, he may not establish those facts through his testimony. Dr. Hudson may, however, opine regarding the effect a mid-service inspection has on a contractor's duties and/or a ship owner's responsibility for inspecting the vessel after it is turned over by the contractor and before cargo is loaded.

Dated this 31st day of January, 2018.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge